TOM BOY STORES, INC., APPELLANT, v. DOUGLAS-GUARDIAN WAREHOUSE CORPORATION, RESPONDENT.—179 S. W. (2d) 145.

St. Louis Court of Appeals. Opinion filed April 4, 1944.

Appellant's Motion for Rehearing Overruled April 21, 1944.

*John C. Vogel* for appellant.

894

*John F. Evans* for respondent.

ANDERSON, J.—This is an appeal by plaintiff from an adverse judgment, in an action against the Douglas-Guardian Warehouse Corporation, respondent herein, for damages for an alleged conversion of 250 cases of canned asparagus.

The petition alleged that the defendant was a public warehouseman for hire, which maintained a warehouse known as Warehouse No. 1, at Peoria, Illinois; that on May 17, 1940, said warehouse issued two negotiable warehouse receipts, Nos. GS 23461 and GS 23462, each for 250 cases of asparagus; that on December 6, 1940, plaintiff was the owner of said warehouse receipts and entitled to possession of the said asparagus, but that defendant on said date converted said asparagus to its own use, and disposed of it to plaintiff's damage in the sum of $1275.

The defendant's amended answer, on which the case was tried, in addition to a general denial, contained a plea that under the Uniform Warehouse Receipts Act in force in Illinois, it was required to deliver, and did deliver, the asparagus to a person in possession of said receipts, which receipts had been endorsed in blank by the person to whom delivery was promised. The answer contained a plea that the person to whom delivery was made was acting with authority as the agent of the plaintiff in securing delivery of said goods and received said goods on behalf of the plaintiff; and, the answer contained a further plea that a trade custom existed which authorized delivery of the stored goods to plaintiff's agent, the original depositor.

Plaintiff's reply, also a general denial, contained an allegation denying that said receipts at the time were endorsed in blank, and averring that they were endorsed by plaintiff for delivery only. The reply further alleged that under the Uniform Warehouse Receipts Act a warehouseman is liable for conversion if he had information that the delivery about to be made was to one not lawfully entitled to the possession of the goods; and, the reply further alleged that the defendant at the time of delivery had full knowledge and information that the plaintiff alone was entitled to possession of the goods.

The evidence showed that defendant was engaged in the warehouse business, and in 1939 had set up a field warehouse known as Warehouse No. 1, in the plant of the White House Canners, Inc., in Peoria, Illinois. The field warehousing system is used primarily to make warehouse receipts available for the borrowing of money, and is used extensively in the canning industry. It is the practice for the warehouse company to lease a portion of the canner's premises, to segregate

it from the remainder of the premises so that the warehouse company has undisputed possession, to post signs, and to place a representative in charge, known as a custodian or bonded representative. It then issues warehouse receipts covering merchandise placed by the canner in the warehouse portion of the building. Warehouse No. 1, Peoria, Illinois, was located on the fourth floor of the White House Canneries building in Peoria, Illinois. This floor was barricaded off from the rest of the building and the door kept locked. The key to that portion of the building was in the possession of the respondent's bonded representative or custodian, Cecil Bilbrey, who until his employment by respondent had been a foreman in the canning department of the White House Canneries.

The case involves a transaction for the sale and delivery of 500 cases of asparagus through two separate negotiable warehouse receipts. The asparagus had been canned and processed by the White House Canneries, Inc., who operated the canning factory in which respondent's warehouse was located. The goods were stored in said warehouse, and respondent issued two negotiable receipts for same, each receipting for 250 cases. These receipts certified that the warehouseman had received in storage said 250 cases of asparagus "for the account of White House Canneries, Inc., or order," "subject to the terms and conditions," set out in the receipts, "to be delivered to owner or holder of this receipt, upon its surrender, properly endorsed." The body of the receipts recited that the warehouseman retained a lien upon the goods for all storage charges and other charges and expenses covered by the Uniform Warehouse Receipts Act of the state.

In June, 1940, the plaintiff purchased from Mr. Oscar Fischer, a food broker who represented White House Canneries, Inc., in St. Louis, the 500 cases (2,000 dozen cans) at a price of $1.27½ per dozen, f.o.b. St. Louis, with all storage, packing, and shipping charges to be paid by White House Canneries, Inc. Plaintiff did not, at the time, take delivery of the asparagus, but accepted delivery of the two warehouse receipts, which contained, at the regular endorsement space on the back of the receipts, the following endorsement: "White House Canneries, Inc., H. D. Camien, Pres."

In October, 1940, appellant received a letter from respondent advising it that some of the cases of asparagus were rusty and spoiled; that storage charges against the goods had accrued in the sum of $638.49, which sum respondent had been unable to collect from White House Canneries; and that respondent was anxious to have the account closed. Thereafter Mr. Krekeler, secretary of the appellant, and its canned goods buyer, determined to secure possession of the goods. He planned to go to Peoria with Mr. Fischer but was unable to get away at that time. However, Mr. Fischer was going to Peoria on December 6th, and, according to Mr. Krekeler's testimony, he, Mr.

Krekeler, gave the two receipts to Fischer "to take over to White House Canneries at Peoria."

Mr. Krekeler further testified: "I gave these two receipts to Mr. Fischer to take up to Peoria, Illinois, for me; Mr. Fischer was representing me in taking these receipts from St. Louis to Peoria. . . . When I gave the warehouse receipts to Mr. Fischer, I didn't give him any detailed instructions as to what he was to do with them, except to take them to Peoria and get delivery of the goods; I didn't expect him to pack and ship them."

At the time Mr. Krekeler delivered the receipts to Fischer, he endorsed them as follows: "Tom Boy Stores, Inc., Clemens G. Krekeler, Jr., Secretary." While this endorsement appears on the back of each receipt, it is not in the place provided for endorsements transferring title to the receipts, but is under the heading, "Delivery Endorsements" where, according to the respondent's evidence, the warehouseman is supposed to list withdrawals from the goods stored with its own endorsement evidencing same. However, appellant's witness Krekeler testified that it was customary for the holder of the warehouse receipts to endorse them in the column under the heading "Delivery Endorsements" where the goods were to be released.

What transpired when Fischer reached Peoria is related by Fischer, who was plaintiff's witness at the trial: "When I got to Peoria I went to the office of White House Canneries. I don't believe I knew the custodian of the warehouse. I went in to see Mr. Camien, president of White House Canneries. I told him I wanted to arrange for the shipment and release of these cases of asparagus. . . . Mr. Camien said the custodian was not there. Then I handed the receipts in, but I don't recall either to him, or to his secretary, Miss Tiernan, and they were going to send them by registered mail for me to Chicago.

. . .

"Q. Now, you were trusting this White House Canneries when you gave Mr. Camien the receipts and asked him to get the goods and ship them down, weren't you? A. That is right."

The warehouse receipts in question were that day mailed by White House Canneries, Inc., to respondent, at its Chicago office, with a letter reading as follows:

"White House Canneries
"Peoria, Illinois.

"Dec. 6, 1940.

"Douglas-Guardian Warehouse Corp.,
"100 West Monroe St.,
"Chicago, Illinois.

"Attention—Mr. Baker, Pres.

"Gentlemen:

"We enclose herewith two, Negotiable warehouse Receipts, GS-23461 and GS-23462, dated May 17th, 1940, covering in full, 500 cases 48-300

Cuts and Tips Asparagus, both receipts being endorsed by Tom Boy Stores, Inc., Clem Krekeler, Jr., Secretary, owners of this stock. Mr. Fischer, of Fischer Brokerage Company, delivered these receipts to us in person, this morning, and he has requested we forward them to you, at the same time, advising Tom Boy will want this merchandise shipped to them some time the coming week, unlabeled. You will receive the release or rather, the requisition from Mr. Bilbrey; the first part of the coming week. He is not here today. We, are forwarding these receipts to you, Registered Mail, return receipt requested, and you will hear from us again the first part of the coming week, regarding the same. Kindly acknowledge.

"Yours very truly,
"White House Canneries, Inc.,
"(Signed) M. M. Tiernan, Sec'y.

"C/C Mr. Oscar Fischer,
"(Personally)
"Tom Boy Stores, Inc.,
"St. Louis, Mo.

"P.S. The reason, too, we are holding up release, is because we expect and actually have, another shipment of 500 cases to be released first part of the week, and we want to keep our cost down—not having to pay for an extra release, but taking all at one time."

The above postscript was not on the letter furnished appellant, as Mr. Camien did not want appellant to know the release was being held up.

The 500 cases of asparagus were delivered to White House Canneries, Inc., on December 27, 1940. Thereafter, White House Canneries, Inc. shipped 250 cases to plaintiff by F. M. James and Sons, Truckers, the shipping ticket showing Peoria Canning Company as the shippers. White House Canneries, Inc. had formerly operated under the name Peoria Canning Co., which fact was known to Mr. Krekeler of Tom Boy Stores, Inc.

Thereafter Mr. Krekeler began an inquiry with reference to the other 250 cases. He testified: "I was after the broker to find out why the shipment hadn't come in. I had two or three conversations with Mr. Camien, the president of White House Canneries, about the missing 250 cases of asparagus; I assume Mr. Fischer was contacting White House Canneries about these 250 cases. I was after him because he was the one that took them up there and originally sold that paper; I expected him to help get these 250 cases. I wrote Douglas-Guardian Warehouse about it during that time; there were communications between me, representing Tom Boy Stores, Inc., or Mr. Fischer, representing me and Tom Stores, Inc., and the president of the White House Canneries about this 250 shortage cases of asparagus. After White House couldn't deliver this asparagus there was some suggestion that they would substitute dry beans; we didn't get either the dry

beans or asparagus. Mr. Fischer talked to me in the course of that six weeks about substituting other goods. . . . Mr. Camien told me these 250 cases were all spoiled; and he was going to replace them with something else.''

Appellant learned that the missing cases had been sold by White House Canneries, and on February 20, 1941, wrote respondent asking as to the disposition of the said asparagus. Respondent replied on March 1, 1941, advising that the entire amount of 500 cases of asparagus had been delivered to White House Canneries. Then appellant made claim on respondent, and on July 18, 1941, respondent wrote appellant as follows:

''Douglas-Guardian Warehouse Corporation

''National Warehousing Service

''Mr. Clem Krekeler         Chicago, Illinois

''Tom Boy Stores, Inc.         July 18, 1941

''3700 Forest Park Boulevard

''St. Louis, Missouri

''Dear Mr. Krekeler:

''Responding to your letter of July 9, we are now in receipt of advice from our legal department that in their opinion the company is not liable on the claim presented by you. Some of the reasons given for this decision are that White House Canneries having packed and stored this merchandise and received negotiable receipts thereon, subsequently in their letter of December 6, 1940, forwarded these negotiable receipts to us after they had been properly endorsed by your company as subsequent transferees thereof. They were forwarded with the statement that a release or requisition for the merchandise would come from Mr. Bilbrey the first part of the next week. In other words, while forwarding the receipts to us it was understood that White House Canneries were retaining control thereof for shipment purposes and that they should be delivered only on their 'requisition,' which would be transmitted through Mr. Bilbrey at a later date. They went further than this and in a postscript stated that they were holding up the release or requisition because 'we expect and actually have another shipment of 500 cases to be released first part of the week and we want to keep our cost down—not having to pay for an extra release, but taking all at one time.'

''From this it is quite apparent that White House Canneries, to whom you entrusted these receipts for transmission, transmitted them with the distinct understanding that control was to remain in them and that they would take possession of the merchandise at a subsequent date along with other merchandise of their own in the warehouse. If your agreement with White House Canneries did not justify their taking this position it is very unfortunate but this company cannot be held responsible for any of the actions of White House Canneries. When you entrusted the negotiable receipts to them, you clothed

them with full indicia of ownership and control and permitted them to obtain possession of the merchandise in exactly the manner in which it was delivered to them.

"From all of the circumstances, we have been forced to reach the conclusion that there must have been some arrangement between Tom Boy Stores and White House Canneries for the acceptance of this merchandise by White House Canneries and the labeling and shipping thereof by them. It is confirmed by the fact that 250 cases were thus handled without any protest on the part of Tom Boy Stores and it was not until Tom Boy Stores was unable to get the balance of the merchandise from White House Canneries that they made claim on us.

"Under all of these circumstances, we are forced to decline liability of the claim. We are sure that you will understand the cold legal defenses set forth above are the analysis of the legal department and not any desire on our part to be belligerent or unfriendly.

"With kind regards, we are

"Very truly yours,

"EABaker                                                   "E. A. Baker
"at
"CC—Mr. Weil                                          "Vice President

The jury returned a verdict in favor of the defendant; and, after unsuccessfully moving for a new trial, plaintiff appealed to this court from the judgment on the verdict.

Appellant complains that the trial court erred in giving certain instructions at respondent's request. In answer, respondent says that appellant failed to make a case for the jury. If this latter proposition be true, it becomes unnecessary to go into the questions raised by the assignment of errors; and our plain duty, under such circumstances, would be to affirm the judgment on the theory that the verdict and judgment were for the right party. [United Construction Co. v. City of St. Louis, 334 Mo. 1006, 69 S. W. (2d) 639.]

This case is governed by the Illinois Warehouse Receipts Act, Chapter 114, Smith-Hurd Illinois Annotated Statutes. The applicable portions of said Act provide as follows:

"Sec. 240. *Obligations on demand.* Sec. 8. A warehouseman in the absence of some lawful excuse provided by this act, is bound to deliver the goods upon a demand made either by the holder of a receipt for the goods or by the depositor, if such demand is accompanied with—

"(a) An offer to satisfy the warehouseman's lien.

"(b) An offer to surrender the receipt properly endorsed.

"(c) A readiness and willingness to sign, when the goods are delivered, an acknowledgment that they have been delivered, if such signature is requested by the warehouseman. In case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the burden shall be upon

the warehouseman to establish the existence of a lawful excuse for such refusal.

"Sec. 241. *Justified in delivering goods.*—When. Sec. 9. A warehouseman is justified in delivering the goods, subject to the provisions of the three following sections, to one who is—

"(a) The person lawfully entitled to the possession of the goods, or his agent.

.  .  .

"(c) A person in possession of a negotiable receipt by the terms of which the goods are deliverable to him or order 'or to bearer, or which has been endorsed to him or in blank by the person to whom delivery was promised by the terms of the receipt or by his mediate or immediate indorsee.

"Sec. 242. *When liable for conversion, etc.* Sec. 10. Where a warehouseman delivers the goods to one who is not in fact lawfully entitled to the possession of them, the warehouseman shall be liable as for conversion to all having a right of property or possession in the goods if he delivered the goods otherwise than as authorized by subdivisions (b) and (c) of the preceding section and though he delivered the goods as authorized by said subdivisions he shall be so liable, if prior to such delivery he had either

"(a) Been requested, by or on behalf of the person lawfully entitled to a right of property or possession in the goods, not to make such delivery, or

"(b) Had information that the delivery about to be made was to one not lawfully entitled to the possession of the goods."

The appellant's evidence shows that the warehouse receipts in question were presented to respondent by the White House Canneries, Inc., agent for appellant herein, and were endorsed in blank by the person to whom delivery was promised by the terms of the receipt, so that under the terms of Section 241 (c), *supra*, the respondent was justified in delivering the goods to White House Canneries, Inc., unless it had information at the time that the delivery about to be made was to one not lawfully entitled to the possession of the goods. If it did have such information, Section 242(c) would impose liability upon it for conversion. Appellant contends that respondent did have such information, because it knew at the time the goods were delivered that Tom Boy Stores, Inc., was the owner of the goods.

It is true that respondent had knowledge of the true ownership of the goods, but there is no evidence in the record that it knew or had reason to suspect that White House Canneries, Inc., as appellant's agent, was not entitled to the possession of the goods. It cannot be doubted that White House Canneries, Inc. was appellant's agent, for Mr. Krekeler testified that he gave the receipts to Fischer "to take over to White House Canneries at Peoria." Appellant admits the agency, but says it was for a limited purpose; that it was merely for

the purpose of delivering the receipts to respondent, and not to receive delivery of the goods. However, there was no notice to respondent of this limited purpose, nor was there any fact or circumstance shown which should have led respondent to doubt that White House Canneries, Inc. was lawfully entitled to the possession of the goods for the purpose of shipping same to appellant. The facts in evidence clearly show ostensible authority in the White House Canneries, Inc. to secure possession of the goods. When appellant delivered the warehouse receipts to the White House Canneries, Inc., it was clothing White House Canneries, Inc. with the customary indicia of ownership, and though respondent knew that title to the goods remained in appellant, it had a right to infer that there was an agreement between the appellant and White House Canneries, Inc. whereby the latter was entitled to possession. There was a delivery here to appellant's agent, who was clothed with apparent authority to receive the goods. Sec. 241(a), *supra*, authorizes delivery to such person. There was no showing that respondent had knowledge that said agent was not entitled to possession of the goods. Therefore, it is plain that if appellant suffered a loss, the loss was not caused by respondent. In this case the facts fail to show a conversion by the warehouseman.

As plaintiff failed to make a case for the jury, it becomes unnecessary for us to consider the points raised with reference to the instructions.

The judgment is affirmed. *Hughes, P. J.*, and *McCullen, J.*, concur.